## SUPERIOR COURT OF BALTIMORE CITY.

Filed December 3, 1928.

DAVID W. CHERTKOFF

VS.

FANNY LYON, ET. AL.

*Karl F. Steinmann* and *H. Rank Bickel* for plaintiff.

*Aubrey Pearre* and *George E. Kieffner* for defendants.

FRANK, J.—

This case was tried before the Court without a jury.

On December 28th, 1923, the defendants conveyed certain property on Etting street in Baltimore City to the plaintiff, and took in part payment therefor a purchase money mortgage in the amount of $3,000, dated Decem-

ber 28th, 1923, and recorded in S. C. L. Liber 4127, folio 156. This mortgage contained the usual fire insurance clause. On the same day, the plaintiff conveyed the property to Messrs. Fox and Schwartz, subject to the purchase money mortgage, the latter assuming performance of all the covenants of the mortgage. Thereafter, Messrs. Fox and Schwartz executed a second mortgage upon the said property to Ida Fax. Fox and Schwartz subsequently conveyed the property, subject to the mortgages, to John B. Broom, who did not, however, in the deed to him formally assume responsibility for the payment of the mortgages.

Upon the conveyance of the property to Fox and Schwartz policies of fire insurance, containing the standard mortgagee clause, were by them taken out and delivered to the defendants herein as mortgagees. When these policies expired some three years later, Broom, who was then the owner of the property, secured and delivered to defendants new policies which contained the standard mortgagee clause in favor of the defendants herein and of said Ida Fax, second mortgagee.

On June 17th, 1927, while Broom was the owner and in possession of the said premises a fire occurred. Nobody connected with this case seems to have known of the fire at or near the time of its occurrence, except Broom and the attorney for Mrs. Fax who had placed the policy with the fire insurance company. The loss was adjusted and Broom obtained from the insurance company a draft for $500, payable to the order of himself, the defendants herein as first mortgagees, and Ida Fax, as second mortgagee. Upon the direction of Mrs. Fax's attorney, Broom took the draft to Robert H. Lyon, who was acting for all the defendants herein and, upon being questioned by him, Broom assured him, as Mr. Lyon stated on the witness stand, that all repairs had been made and that the property had been restored to a condition better than that before the fire. Broom denied making this statement to Mr. Lyon, but admitted that he did say to him that, prior to the fire, he, Broom, had made improvements to the property at a cost in excess of $500. The repairs were in fact never made and the property remained in its damaged condition.

Mr. Lyon, having satisfied himself in this way, but in no other way, that the repairs to the property had been made, on behalaf of all of the defendants, endorsed the draft, told Broom that it was necessary to get the endorsement likewise of Mrs. Fax, and turned the draft over to Broom. He testified that, had he not believed that the repairs had already been made, he would not have so endorsed or delivered the draft. Broom took the draft to Mrs. Fax's attorney and delivered it to him. The attorney gave to Broom his own check for $328.50, retaining $171.50 of the amount of the draft in payment of overdue mortgage notes under the second mortgage, with interest, and $15 Court costs, together aggregating that amount. Broom used the $328 thus turned over to him for his own purposes, including, as he testified, the payment of some of the bills for repairs made to the property prior to the fire.

Throughout this whole period, the defendants had insisted on the liability of the plaintiff under the purchase money mortgage and had notified him of numerous defaults, all of which apparently were made good by some one else that the plaintiff, until the last default, presently to be referred to. The plaintiff had invariably sent the notices received by him to Fox and Schwartz.

Finally, Broom defaulted and the defendants notified the plaintiff that he would have to pay their mortgage debt, or there would be a foreclosure of the first mortgage. Instead of making payment of the mortgage, the plaintiff preferred to purchase it, and have it assigned to his nominee, for his account and benefit, and, accordingly, he paid the principal and interest and received an assignment, without recourse, of the principal mortgage note, an interest note and the mortgage itself, all in the name of his nominee. At the time of the assignment, he asked for the insurance policies and these were assigned to him, without, however, any statement being made to him as to the fire above referred to, the settlement therefor or the turning over to Broom of the settlement draft as above recited.

The plaintiff thereupon procured the foreclosure of the purchase money mortgage, had to buy the property in

himself at the foreclosure sale and incurred a substantial loss upon the whole transaction. Shortly after he procured and paid for the assignment of the mortgage, as above described, he learned for the first time of the fire and of the payment of the $500, as above described.

The plaintiff brings this action against the defendants upon the common count for money had and received and upon special counts setting forth the obligation of the defendants to account to and to allow him for the sum of $500.

Any mistake of parties, growing out out the fact that the assignment of the mortgage was made to another person than the plaintiff, was expressly waived by stipulation of the parties.

The plaintiff's rights to recover herein is based upon a rule of law, which is well stated in two citations made by Chief Judge Boyd in his opinion in the case of Seidewitz vs. Sun Life Insurance Co., 144 Md. 508, 514, as follows: "In Tiffany on Real Property (2nd Ed.) 2458, Sec. 617, Mr. Tiffany, after stating the law if there is no provision in the mortgage requiring the mortgagor to insure the premises, says, 'If, however, the mortgagee insures the property on account of the mortgagor, or by his request, or at his expense, because the latter fails to comply with his covenant to insure, the proceeds of the policy must be applied on the mortgage debt.' In 19 R. C. L. 405, par. 184, the writer, after referring to where the mortgagee insures his separate interest at his own expense and for his own benefit, says: 'However, a different rule obtains if the insurance has been effected at the request or by the authority of the mortgagor and at his expense, or under circumstances that would make him chargeable with the premium. In that case he is entitled to the benefit of the proceeds thereof, and to have them applied in extinguishment of his debt, although this doctrine may be altered by provisions of the policy itself, providing for subrogation of the insurance company to the rights of the mortgagee and showing that only the interest of the mortgagee was designed to be insured.' "

In the note in 11 A. L. R. 1297, it is stated that "the mere fact that the mortgagor has paid or is liable for the insurance premium has been held sufficient to require the proceeds of an insurance policy taken out by the mortgagee to be applied as a payment on the mortgage, where there is no stipulation in the policy for subrogation in favor of the insurance company of the rights of the mortgagee upon payment of the policy" and Pendleton vs. Elliott (1887), 67 Mich. 496, is quoted as authority for the statement that the mortgagor's "right in this respect does not depend upon the fact that he has paid for the insurance, nor whether the mortgagee procured the insurance intending to look to the mortgagor for reimbursement of the premium; but it depends upon whether he is liable to the mortgagor therefor under any agreement express or implied."

These citations, it is believed, announce the proposition of law, upon which plaintiff's contention is founded, as favorably as it may properly be stated. I have been referred to no Maryland case which, upon its facts, needs to rely for its decision upon this rule.

In Seidewitz vs. Sun Life Insurance Co., supra, the controversy arose over an auditor's account stated after foreclosure and sale of the mortgaged property. There, as in the pending case, the mortgagor had covenanted to keep the improvements insured against loss by fire for the benefit of the mortgagee, but the insurance clause contained a further express stipulation that the insurance company shall make payments for such losses to the mortgagee only and not to the mortgagors and mortgagee, *and that such payment to the mortgagee should be applied to the extinguishment of the mortgage debt.* It was held that, in view of this language, "it would be unjust and inequitable for that company (the mortgagee) to collect the amount stated to be due from insurance companies in addition to what was allowed it in the audit" (i. e., the amount of the mortgage debt). 144 Md., at page 516.

In Callahan vs. Linthicum, 43 Md. 97 (cited in Seidewitz vs. Sun Life Insurance Co., supra), the mortgagee who had been the owner of the property, had taken out fire insurance thereon prior to the conveyance thereof to the mortgagor. Upon the sale and conveyance thereof by the mortgagee to the mortgagor, the mort-

gagor executed and delivered a purchase money mortgage thereon to the mortgagee. The policy of insurance was continued unchanged. The name of the mortgagor did not appear in the policy. When later the fire occurred, the insurance company paid to the mortgagee the amount due under the policy. The mortgagee had expressly promised the mortgagor that when the insurance money should have been received from the company, he would give it to the mortgagor or would allow it as a credit upon the mortgage debt. Under these circumstances the majority of the Court held that the mortgagor was entitled to be credited with the amount so paid.

Three separate opinions were delivered in this case; one by Chief Judge Bartol, concurred in by Judge Miller; a second by Judge Stewart, who agreed with the conclusions of the first opinion, but assigned other reasons; a dissenting opinion delivered by Judge Alvey on behalf of Judge Grason and himself, holding that the promise of the mortgagee was a nudum pactum and denying to the mortgagor any right of recovery. However, the majority conclusion was referred to with approval in Skinner vs. Houghton, 92 Md. 68, 69; Heintz vs. German Building Association, 95 Md. 160, 169, and in Seidewitz vs. Sun Life Insurance Co., supra.

The case of Heintz vs. German Building Association, supra, arose upon a demurrer to a bill in equity to require the mortgagees to bring into Court and to account as trustee for the proceeds of a policy of fire insurance. The bill alleged that the plaintiff had held the policy of insurance and being indebted to the mortgagee had assigned and delivered the policy to it to secure it against loss by fire. In overruling the demurrer, the Court said: "If, therefore, in the case now under consideration the mortgage debt has been paid and the money has been paid or collected on the insurance policy, the party who holds the fund, holds it as trustee for the appellant, and she is clearly entitled to the recovery of it. In such a case the mortgagee is the trustee of the policy, and would be liable in a court of equity for the money received from it." The mortgagor here had owned the insurance policy and had assigned it to the mortgagee as collateral security only. In this important particular, it differed from the case now under consideration.

In the case of Frontier Mortgage Company vs. Heft, 146 Md. 1, an action at law to recover the amount of the mortgage debt had been instituted by the appellant against the appellees. Prior to the trial, it had been entered to the use of the insurance company which had paid to the appellant an amount in settlement of a loss by fire upon the mortgaged premises, sufficient to satisfy in full appellant's claim as assignee of the mortgage. Appellees contended that this payment fully satisfied the mortgage debt. The appellant had purchased from the original mortgagee the mortgage, which contained the usual covenant for insurance. No policy was assigned and the appellant procured the policy under which the loss occurred and the payment was made. This policy was in the name of the appellees, payable to appellant as assignee of the mortgage.

It might have been contended in that case that the appellees' covenant for insurance in the mortgage made them liable for the insurance premium and that, therefore, under the rule above cited, they were entitled to be credited with the amount paid under the policy. Under the provisions thereof, the insurance underwriters were held to be subrogated to the rights of the appellant mortgagee. In the pending case, the insurance policy was not offered in evidence. It is impossible, therefore, to determine whether subrogation could be claimed here. Because the insurance company was subrogated to the rights of the mortgagee against the mortgagor, Frontier Mortgage Company vs. Heft, supra, comes within the class of cases, in which the mortgagor is held to have no claim to the insurance money, and for this and other reasons does not apply to the pending case.

The undisputed facts in the present case disclose a situation in which the plaintiff had long since disposed of all interest in the mortgaged property, had himself never secured any fire insurance policy thereon and had conveyed the same to Fox and Schwartz who had assumed the performance of the covenants of the mortgage. In pursuance thereof they had secured in-

surance for the benefit of themselves and their mortgagees. The plaintiff's name did not appear in the policy. Subsequently, they conveyed the property, subject to the moragtges, to Broom, who assumed no obligation upon the covenants of the mortgage, but, nevertheless, procured a fire insurance policy upon the mortgaged property, payable to himself, the defendants, mortgagees, and the second mortgagee. Plaintiff's name did not appear in this policy. While this policy was in force, the fire occurred and the sum of $500 in settlement of the loss was paid by a draft to the order of Broom, the defendants and the second mortgagee.

If the plaintiff may recover this sum from the defendants, that may be only because under the authorities already cited, the insurance had been effected at his request or by his authority and at his expense or under circumstances to make him chargeable with the premium. Had the loss occurred under the policy secured by Fox and Schwartz, there might have been a basis for the contention that the insurance had been effected pursuant to their covenant with the plaintiff so to do. Broom, however, was under no obligation to the plaintiff or to the defendants to provide such insurance. (Jones: Mortgages (8th Ed.), Sec. 489, page 637.) In no real sense, therefore, can it be said that this insurance was effected at plaintiff's request. This was the very policy under which the loss occurred and the payment was made.

Nor can it be said, with any greater effect, that this policy was procured by the authority of the plaintiff. Certainly, it was not obtained at his expense or under circumstances to make him chargeable with the premium. Broom incurred the expense and paid the premium, and it is not conceivable that he might have any claim therefor against the plaintiff. Moreover, the defendants by accepting, retaining and participating in the collection of a loss under this policy disentitled themselves to make any claim against the plaintiff under his covenant in the mortgage, himself to provide such insurance.

I hold, therefore, that the plaintiff is in no manner entitled to receive the sum of $500 claimed by him. His prayer will be refused. Owing to the conflict in the testimony as to the conversation between Lyon and Broom, I am unable to grant defendants' prayer No. 1. Their prayer No. 2 is granted, and this requires a verdict for the defendants. Exceptions are reserved to all adverse rulings.